UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-60029-CR-BLOOM

UNITED STATES OF AMERICA

v.

SHANISA LORASIA BELL,

    Defendant.
_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF SPEEDY TRIAL

Defendant, Shanisa Lorasia Bell (hereinafter "Defendant"), has moved to dismiss her Indictment on the ground that the United States excessively delayed her arrest, in violation of her Sixth Amendment right to a speedy trial (DE 13). The United States, by and through the undersigned Assistant United States Attorney, hereby files this response in opposition to Defendant's motion and submits the Government's diligent and good faith effort to bring the Defendant to trial promptly did not violate her right to a speedy trial. The Government respectfully requests that the Court set an evidentiary hearing so that the Government can submit proof of its efforts.

**I.    FACTS AND PROCEDURAL HISTORY**

On January 27, 2017, a federal grand jury sitting in the Southern District of Florida returned a three-count indictment against the Defendant. Count One charges the Defendant with using unauthorized access devices, including social security numbers and debit cards, to fraudulently obtain $1,000 or more in a one-year period, in violation of Title 18, United States Code sections

1

1029(a)(2) and 2.  Counts Two and Three charge the Defendant with aggravated identity theft, in violation of Title 18, United States Code sections 1028A(a)(1) and 2 (DE 1).

On January 30, 2017, law enforcement agents attempted to arrest the Defendant at her last known address 5621 West Hillsborough Blvd, Apt. 306, Coconut Creek, Florida.  This was the latest address listed on the Defendant's driver's license since November 23, 2016.  Agents identified themselves to the Defendant's grandmother and the grandmother's boyfriend.  Defendant's grandmother stated that the Defendant "moved up north" but could not provide an address or phone number.  Agents left their contact information with the grandmother and asked that she have the Defendant contact them.  Agents did the same with a neighbor they spoke to across from the grandmother's apartment.

Agents also checked the public database CLEAR and found an address "related" to the Defendant.  Agents went to 1448 Avon Lane, apartment 36, in North Lauderdale, but were advised by the property manager that the Defendant does not reside there.  Agents entered the arrest warrant into NCIC so that they would be notified if the Defendant was ever located.

On February 24, 2017, agents attempted to locate the Defendant through multiple database searches including SunTax, DAVID, Broward and Dade Courts, CLEAR, and traffic tickets.  SunTax indicated that the Defendant had no employment history since the first quarter of 2015.  DAVID indicated that the Defendant's driver's license was issued on January 17, 2013 and was suspended in October 2016.  The latest address listed on her driver's license was the grandmother's residence at 5261 West Hillsboro Blvd., apt. 306 in Coconut Creek, Florida.  Once again surveillance was conducted at that residence with negative results.  On February 27, 2017, the Honorable Beth Bloom signed an order transferring the case to fugitive status.

Multiple attempts to locate the Defendant occurred over the next four years. On February 10, 2021, agents arrested the Defendant at a clothing store after receiving information she may be there. On February 11, 2021, the Government agreed to recommend a personal surety bond and Magistrate Judge Otazo-Reyes granted the bond and the Defendant was released from custody. The Defendant was arraigned on the three-count Indictment on February 19, 2021 (DE 12). The Government provided discovery to the Defendant on March 5, 2021. The case is now set for jury trial on May 3, 2021.

## II. ARGUMENT

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Court employs a balancing test to determine whether a delay in a defendant's trial deprived him of his constitutional right to a speedy trial. *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010) (citing *Barker v. Wingo*, 407 U.S. 514, 522, 530 (1972)). Four factors, commonly referred to as the *Barker* factors, bear on a defendant's constitutional speedy trial claim: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice borne by the defendant." *Villarreal*, 613 F.3d at 1350. "A delay is considered presumptively prejudicial as it approaches one year." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). But "[i]f, as here, the first three factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim." *Villarreal*, 613 F.3d at 1355. In this particular case, a balancing of these four factors weighs in favor of the United States.

### A. Length of the Delay

Because the length of time between the Defendant's 2017 indictment and February 2021 arrest exceeded one year, the Government acknowledges that this period of delay is "presumptively prejudicial" under 11th Circuit precedent. *Dunn,* 345 F.3d at 1296. Two of the remaining three *Barker* factors, however, favor the Government. *See Doggett v. United States*, 505 U.S. 647, 655-56 (1992) ("presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria."); *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) ("[N]o single factor is sufficient to find a deprivation of the defendant's Sixth Amendment right.").

### B. Reason for the Delay

As to the second *Barker* factor, the reason for delay, the Court allocates different weight to different reasons for the passage of time. A deliberate attempt to delay the trial to hamper the defense is weighted heavily against the government, a more neutral reason such as negligence is weighted less heavily but is nevertheless considered, and a valid reason justifies appropriate delay. *Villarreal*, 613 F.3d at 1351.

The Defendant has never promulgated, nor could she in good faith, that the Government purposely and in bad faith caused the delay between her indictment and arrest. In fact, the Defendant essentially concedes that, at most, the Government's actions were negligent and argues that bad faith is "irrelevant" in determining the merits of her motion to dismiss (DE13: 12-13). However, the case most heavily relied upon by the Defendant, *United States v. Oliva,* 909 F.3d 1292 (11th Cir. 2018) held that for government action to be dilatory, such that the reason for delay factor will weigh heavily in favor of finding that a Sixth Amendment speedy trial violation occurred, the government action requires intent; negligence does not suffice.

The Defendant's argument for dismissal focuses on the length of time (four years) between her indictment and arrest, as well as the additional efforts the Government agents could have taken in attempting to locate her. The Government submits that the Court should focus on the reasonableness of the actions taken by the Government during the relevant time period, as periods of delay as long as ten years (*Villarreal,* 613 F. 3d 1344), and 15 years (*United States v. Lazzara,* 709 Fed.Appx. 578 (11th Cir. 2017)) have not resulted in a violation of defendants' speedy trial rights.

The Defendant was indicted on January 27, 2017 (DE 1). On January 30, 2017, law enforcement agents attempted to arrest the Defendant at her last known address 5621 West Hillsborough Blvd, Apt. 306, Coconut Creek, Florida. This was the latest address listed on the Defendant's driver's license since November 23, 2016. Agents identified themselves as law enforcement officers to the Defendant's grandmother and the grandmother's boyfriend. Defendant's grandmother stated that the Defendant "moved up north" but could not provide an address or phone number. Agents left their contact information with the grandmother and asked that she have the Defendant contact them. Agents did the same with a neighbor they spoke to across from the grandmother's apartment.

Agents also checked the public database CLEAR and found an address "related" to the Defendant. Agents went to 1448 Avon Lane, apartment 36, in North Lauderdale, but were advised by the property manager that the Defendant does not reside there. Agents entered the arrest warrant into NCIC so that they would be notified if the Defendant was ever located.

On February 24, 2017, agents attempted to locate the Defendant through multiple database searches including SunTax, DAVID, Broward and Dade Courts, CLEAR, and traffic tickets. SunTax indicated that the Defendant had no employment history since the first quarter of 2015.

DAVID indicated that the Defendant's driver's license was issued on January 17, 2013 and was suspended in October 2016. The latest address listed on her driver's license was the grandmother's residence at 5261 West Hillsboro Blvd., apt. 306 in Coconut Creek, Florida. Once again surveillance was conducted at that residence with negative results.

Neither the Defendant's grandmother, nor the Defendant, ever contacted the agent who left his information. In February of 2018 agents conducted multiple database searches including SunTax, DAVID, Broward and Miami-Dade Courts, CLEAR, and traffic tickets. Again, there had been no discernable employment history since the first quarter of 2015, and no change in driver's license information. CLEAR, likewise, had no new location or contact information for the Defendant. Agents did discover that the Defendant had received a traffic ticket while driving a Toyota registered to an individual who resided at 7817 Virgo Street, Jacksonville, Florida, 32216. A request for assistance was made and Homeland Security Investigations in Jacksonville conducted surveillance on the Virgo Street residence on multiple occasions with negative results.

On May 16, 2019, agents conducted searches of all the previously mentioned public and law enforcement databases with negative results. On June 6, 2019, June 14, 2019 and June 19, 2019, agents surveilled the Defendant's grandmother's residence (and Defendant's last known address) with negative results. On July 17, 2019, agents conducted a "knock and talk" at this same address and were told that the Defendant does not live at that location. Apparently at that time the Defendant's grandmother had moved as well.

On August 15, 2019, agents conducted surveillance at 2110 NW 47th Avenue in Lauderhill, Florida. This was a new address associated with the Defendant in the database CLEAR. The Defendant was not seen and the vehicle parked in the driveway came back to an unknown male W.G. On December 6, 2019, agents conducted the same public and law enforcement database

6

searches previously mentioned.  The only new information received was two new addresses associated with the Defendant in CLEAR; 1628 NW 11th Street in Fort Lauderdale, Florida, and 2074 NW 43rd Terrace in Lauderhill, Florida.

On December 31, 2019, agents conducted surveillance at 1628 NW 11th Street, Fort Lauderdale, Florida with negative results.  Agents then conducted surveillance on both 1628 NW 11th Street, Fort Lauderdale, Florida and 2074 NW 43rd Terrace in Lauderhill, Florida a total of twenty times between January 3, 2020 and April 24, 2020.  Individuals other than the Defendant were observed, as were multiple vehicles unassociated with the Defendant.

On or about April 29, 2020, two Instagram accounts were identified as being related to the Defendant: _piinkystyles (using the name Louriasia La'vie); and Eye4fashionnn.  Agents also learned that the Defendant may be associated with the Endless Beauty Bar located at 4600 NW 7th Avenue in Miami, Florida.  Agents surveilled this location on April 29, 2020, May 5, 2020 and May 6, 2020 with negative results.

In January 2021, agents learned that the Defendant's business was located at 4331 NW 7th Avenue in Miami, Florida.  Agents ultimately arrested the Defendant at that location.

The Government submits that it acted with reasonable diligence in its attempt to locate the Defendant for purpose of the speedy trial claim.  Assuming, arguendo, that the agents "could have been more diligent" in locating and arresting the Defendant, such lack of diligence does not amount to bad faith.  *United States v. Bibb*, 194 F. App'x 619, 622 (11th Cir. 2006) (concluding the government's lack of diligence in locating defendant "did not weigh heavily against the government" in the absence of bad faith).  Instead, lack of diligence is more appropriately characterized as negligence, which the Supreme Court has classified as a "more neutral reason" that should not be weighed as heavily against the government as bad faith.  *Barker,* 407 U.S. at

531; *see also United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991) ("neutral reasons for delay should be weighed less heavily against the government than other factors, such as intentional prosecutorial delay"). Thus, under circumstances where the Government is merely negligent in locating and arresting a defendant, the Court may properly conclude this reason for delay should not weigh heavily against the Government. *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) ("[T]he government is not required to exhaust all conceivable avenues for locating [a defendant] after his indictment[.]"); *United States v. James*, 183 F. App'x 923, 927-28 (11th Cir. 2006) (affirming denial of motion to dismiss on the basis of ten-year delay even though government "could have done more to apprehend" defendant). *See also Lazzara,* 709 Fed.Appx. at 581 (Even if the government may have been able to do more to locate the defendant, its actions, at best, were only negligent, and could not be weighed as heavily as acts done in bad faith).

Given the agents' efforts to locate the Defendant, the Government submits that it in no way acted in bad faith, nor was it grossly negligent. The agents made significantly more efforts than did the agents in the cases cited and relied upon by the Defendant.[1] The Defendant's own grandmother, with whom she had been residing, did not even know where the Defendant moved to "up north," or have a working phone number for her. Therefore, the "reason for the delay" factor should not be weighed heavily against the Government.

C. Assertion of Speedy-Trial Right

Ostensibly the Defendant's grandmother would have communicated to the Defendant, at some point, that law enforcement agents had come to the residence looking for her and left their

---

[1] The Defendant relies heavily on *United States v. Ingram,* 446 F.3d 1332 (11th Cir. 2006) to argue that negligence is enough and a four-year delay vitiates the need for bad faith; however, the agents in that case exerted little to no efforts in locating the Defendant. The agents' actions here more closely resemble the agents' actions taken in *Villarreal,* 613 F.3d 1344, where a ten-year delay did not result in a speedy trial violation.

8

contact information. Although the Government submits the Defendant bears some burden, there is no evidence that the Defendant knew of the actual Indictment. Therefore, the Government does not dispute that the Defendant asserted her right to a speedy trial, as required to satisfy the third factor in the *Barker* test.

### D. Actual Prejudice

The Defendant cannot satisfy the showing of prejudice necessary to prevail under the fourth *Barker* factor. Because not all of the *Barker* factors weigh heavily against the Government, the Defendant must show actual prejudice resulting from the delay. *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir. 1985). To meet this standard, the Defendant must demonstrate one of the following conditions: (1) oppressive pretrial incarceration, (2) anxiety and concern, or (3) possible impairment of her defense. *See Barker*, 407 U.S. at 532. The Defendant must proffer more than "conclusory assertions of prejudice" or "unsubstantiated allegations of witnesses' faded memories." *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir. 1994). "Speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required...." *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986).

The victim witnesses' testimony will be the burden on the Government. Other than the victims' testimony, this prosecution is essentially a paper and ATM video case. The Government proffers that business records, bank statements, and ATM surveillance will show approximately $166,000 in Unemployment Insurance benefits paid on claims made in the names of 134 different people were transferred to eight accounts, from which the Defendant withdrew cash. All of the necessary discovery has been timely provided to the Defendant.

An articulate explanation of actual prejudice is required; a general allegation of "presumptive prejudice" does not suffice, especially given the nature of the charges and the existing proof. Thus, this fourth *Barker* factor weighs heavily in favor of the Government.

### III. CONCLUSION

Dismissing an indictment is an extraordinary remedy. *Oliva,* 909 F.3d 1292. For the Defendant to obtain the extreme remedy of dismissal of her Indictment, she must demonstrate that **all** four *Barker* factors weigh **heavily** against the Government. The Defendant has failed to do so, and her motion should be denied. The Government requests that the Court schedule a hearing if additional proof is required.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY:   */s/ James M. Ustynoski*
JAMES M. USTYNOSKI
Assistant United States Attorney
Court Id. A5502615
99 NE 4 Street
Miami, Florida 33132
Tel: (786) 439-3176

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 26, 2021 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                         */s /James M. Ustynoski*
                                                       James M. Ustynoski
                                                       Assistant United States Attorney