# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-60029-CR-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHANISA LORASIA BELL,

    Defendant.

_____/

### ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on the Defendant's Motion to Dismiss for Violation of Speedy Trial, ECF No. [13]. The Court has considered the Motion and all attachments, the Government's Response, the Defendant's Reply and attachments, the record in the case, the applicable law, and is fully advised. In addition, the Court held an evidentiary hearing on April 15, 2021, and has further considered the testimony, evidence, and arguments. *See* ECF Nos. [19], [20]. Because the Government did not fulfill its constitutional duty to make a diligent and good faith effort to locate and apprehend the Defendant, the Motion is granted.

    **I.**    **BACKGROUND**

On January 27, 2017, a federal grand jury sitting in the Southern District of Florida returned a three-count indictment against the Defendant Shanisa Lorasia Bell. Count One charges the Defendant with using unauthorized access devices, including social security numbers and debit cards, to fraudulently obtain $1,000 or more in a one-year period, in violation of Title 18, United States Code, sections 1029(a)(2) and 2. Counts Two and Three charge the Defendant with aggravated identity theft, in violation of Title 18, United States Code, sections 1028A(a)(1) and 2. ECF No. [1].

The relevant time period related to the conduct alleged in the Indictment is July 1, 2015, through June 30, 2016. An Arrest Warrant issued on January 27, 2017, see ECF No. [2], and one month after the Arrest Warrant issued, the case was transferred to fugitive status. *See* ECF No. [3].

On February 10, 2021, the Defendant was arrested in Miami at Eye4Fashion, a clothing business she owns. The Defendant had her initial appearance on February 11, 2021, *see* ECF No. [6], she was arraigned on February 19, 2021, *see* ECF No. [12], and Defendant filed the instant Motion on March 12, 2021. The Defendant now moves for dismissal of the Indictment based upon a violation of her Sixth Amendment right to a speedy trial.

## II. LEGAL STANDARD

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. The Sixth Amendment right to a speedy trial attaches when the defendant is indicted, arrested, or otherwise officially accused and continues until the date of trial. *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982). As a result, the Government "has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial." *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)).

The United States Supreme Court adopted a balancing test in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated based on post-indictment delay. The four factors are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant as a result of the delay. *Id.*

The first factor requires a finding that the delay is long enough — whether "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively

prejudicial' delay" — to trigger analysis of the *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citing *Barker*, 407 U.S. at 530–31). "That is, if a delay is not presumptively prejudicial, a defendant's Sixth Amendment right is not deemed violated and the remaining factors need not be considered." *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999) (citation omitted).

As to the first factor, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31 (footnote call number omitted). Notably, "delays exceeding one year are generally found to be 'presumptively prejudicial.'" *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996) (citation omitted). In *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006), the Eleventh Circuit observed that delays exceeding one year are generally found to be presumptively prejudicial and determined that a two-year delay was sufficient to proceed with the *Barker* analysis. *Id.* at 1336. If the threshold is met, the court properly proceeds with the remaining three factors in the *Barker* analysis.

### III. DISCUSSION

#### A. Length of delay

The first factor of the *Barker* test is satisfied here. The record reflects a four-year delay between the Indictment (January 27, 2017) and the Defendant's arrest (February 10, 2021). The Government readily acknowledges that the period of delay between the return of the Indictment and the Defendant's arrest is "presumptively prejudicial." *See* ECF No. [15] at 4. As such, the Court proceeds to address the remaining three factors. *See Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

### B. Reason for delay

A defendant has no duty to bring herself to trial. *Barker*, 407 U.S. at 527. The Government has a "constitutional duty to make a diligent, good-faith effort" to locate and apprehend a defendant and bring that defendant to trial. *Smith*, 393 U.S. at 383. And it is the Government that bears the burden of establishing valid reasons for the delay. *United States v. Villareal*, 613 F. 3d 1344, 1351 (11th Cir. 2010) "[T]he Government's failure to pursue a defendant diligently will weigh against it, more or less heavily depending on if the Government acted in good faith or bad faith." *Id*. However, "a defendant who intentionally evades the Government's efforts to bring him to trial is culpable in causing the delay." *Ingram*, 446 F.3d at 1337. ln determining whether the Government has diligently pursued a defendant, a court must keep in mind that diligence does not require the Government to pursue futile legal gestures. *Bagga*, 782 F.2d at 1543.

Moreover, where "the defendant is not attempting to avoid detection and the Government makes no serious effort to find him, the government is considered negligent in its pursuit." *Id.* (citing *Doggett*, 505 U.S. at 653). "[D]ifferent weights should be assigned to different reasons" given for the delay. *Barker*, 407 U.S. at 531 (alteration added). A "neutral reason" like "negligence" "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

The parties agree that there is no evidence that the Defendant knew of the Indictment before her arrest or that she knew law enforcement was attempting to locate her. The Government asks the Court to focus on the reasonableness of the actions taken by law enforcement. The Defendant contends that the Government failed to diligently pursue the Defendant.

i.  *The Government's efforts to locate the Defendant*

The testimony and evidence reflect that the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI") opened a case file on January 26, 2017. HSI started its investigation after the agent in charge, Special Agent Roberto Valle, received information that the Defendant was linked to a transaction involving receipt of benefits from the Michigan Unemployment Insurance Agency. An Indictment was filed the following day and an arrest warrant issued. *See* ECF Nos. [1], [2].

On January 30, 2017, law enforcement agents conducted background checks on the Defendant in an effort to locate and arrest her. This included a search of multiple DHS databases, as well as public searches, National Crime Information Center ("NCIC") and the State of Florida databases. The Defendant's last known address was 5621 West Hillsborough Blvd, Apt. 306, Coconut Creek, Florida, the address listed on the Defendant's driver's license since November 23, 2016. Agents arrived at the address and identified themselves to the Defendant's grandmother and a male, the grandmother's significant other. Defendant's grandmother stated that the Defendant was up north with friends for a few days but could not provide an address or phone number. Agents left their contact information with the grandmother and asked that she have the Defendant contact them. Agents also spoke with the immediate neighbors near the grandmother's apartment and left information so Defendant could contact them. Seven HSI Reports of Investigation were introduced into evidence and proved to be inconsistent with the agents' testimony as many efforts testified to were not fully documented in the reports. The Court accepts the agents' testimony regarding their further efforts. Those efforts consisted of ongoing surveillance at the grandmother's address for two months, approximately 20 separate times. Agents set up surveillance at different times, sometimes for 8-10 hours a day. Agents also checked the public database, Citizen Law Enforcement Analysis and Reporting ("CLEAR"), and found another address related to the

Defendant. Agents went to that address, 1448 Avon Lane, Apartment 36, in North Lauderdale, Florida, but were advised by the property manager that the Defendant did not reside there. Agents then entered the arrest warrant in the NCIC.

On February 24, 2017, agents attempted to locate the Defendant through several database searches, including The Department of Revenue System for Unified Taxation ("SunTax"), Driver and Vehicle Information Database ("DAVID"), Broward and Dade Courts, CLEAR, and county and municipal traffic tickets. SunTax indicated that the Defendant had no employment history since the first quarter of 2015. DAVID indicated that the Defendant's driver's license was issued on January 17, 2013 and was suspended in October 2016. Agents asked the Florida Department of Motor Vehicles ("DMV") to flag the Defendant's name in the event she showed up at the DMV to either renew her license, clear her outstanding suspension, or to renew the registration of her vehicle. The latest address listed on her driver's license was her grandmother's residence at 5261 West Hillsboro Blvd., Apartment 306 in Coconut Creek, Florida. Once again surveillance was conducted at that same residence with negative results. No further efforts to locate the Defendant took place during the next 12 months.

In February 2018, law enforcement's database search revealed that the Defendant received a traffic ticket in Jacksonville, but the car did not belong to the Defendant. Law enforcement thereafter went to the Jacksonville address registered for the vehicle with no success. No further efforts took place for the next 15 months.

In June 2019, the lead case agent, Roberto Valle, was transferred and another case agent, Charles Marabale, took over the investigation. Between June 6, 2019 and August 15, 2019, agents conducted 4-5 surveillances of the Coconut Creek address (grandmother's address), one knock and talk at the same address, and ran several license plates of vehicles near the apartment. On August 15, 2019, law enforcement received photos from HSI Special Agent Rodriguez related to a drive-

by surveillance of another address, 2110 N.W. 47th Avenue, Lauderhill, Florida. Agents conducted 1-2 surveillances of that address with no success, and also returned to the Coconut Creek address one time. The agents learned of two other addresses and thereafter conducted approximately 20 surveillances at each address. The agents then utilized several law enforcement databases, including facial recognition, and located a profile picture of the Defendant on an Instagram account. The file was transferred to Agent Matthew Parker in May 2020, after Agent Marabale was transferred to another unit. There were two Instagram accounts identified that were associated with the Defendant, one listing the business name and business address. They conducted surveillance approximately 4-5 times at the business address, 4331 N.W. 7th Avenue, Miami, Florida, went into the business to locate the Defendant, and monitored social media during October-November 2020. While the Department of Homeland Security located the Defendant in November 2020, it was advised by the assigned prosecutor that no arrests should be made due to COVID-19. The Defendant was ultimately arrested on February 10, 2021 in Miami at Eye4Fashion, the business she owns.

###### ii. *What the Government did not do*

The Government contends that "it acted with reasonable diligence in its attempt to locate the Defendant for purpose of the speedy trial claim." ECF No. [15] at 7. As such, the delay was unintentional and, therefore, the second *Barker* factor cannot weigh heavily against it. The Defendant highlights that that "the Government's delayed, cursory, and sporadic effort, along with a failure to follow obvious and available leads, does not amount to a serious effort done with reasonable diligence." ECF No. [17] at 1. Under the circumstances presented in this case, the Court agrees with the Defendant.

First, during the hearing, evidence was presented that the case agent was in possession of the Defendant's social media posting in 2016, before the Defendant was indicted. Nevertheless,

the record reflects that agents did not further investigate the Defendant's social media until several years later in 2019. Indeed, once the case agent looked at the Defendant's Instagram page, they located her. The Defendant attached to her Motion a Facebook page dated December 6, 2015 for "Pinky Hernandez," presumably the Defendant. *See* ECF No. [13-1]. In addition, Defendant attaches the Sunbiz.Org Division of Corporations page reflecting a registration of her business filed September 22, 2017, *see* ECF No. [13-2], yet the record does not reflect any investigation or follow-up by agents regarding the Defendant's business, and where she was ultimately located and arrested.

Second, and most importantly, the government provides no explanation for the two large gaps of time during which the investigation in this case lay dormant. Between the end of February, 2017 and February, 2018, law enforcement activity was non-existent and consisted primarily of database searches. Similarly, between February, 2018, when agents unsuccessfully pursued the Jacksonville lead, and May 2019, investigative activity consisted of sporadic "drive-bys" to the earlier addresses and a mere recertification in the NCIC database.

While negligence is "more neutral" and "should be weighted less heavily" than bad-faith acts, "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *United States v. Oliva*, 909 F.3d 1292, 1301-02 (11th Cir. 2018) (quoting *Barker*, 407 U.S. at 531 and *Doggett*, 505 U.S. at 657). "[A] valid excuse, such as a missing witness, justifies reasonable delay." *Id*. at 1301 (citing *Barker*, 407 U.S. at 531). And "negligence alone *can* be, but *must* not be, weighed heavily against the Government depending upon the circumstances." *Id*. at 1303 (emphasis in original).

The amount of delay due to *complete* inactivity amounts to 27 months out of a 48-month delay, which is more than half of the time between the Indictment and Defendant's arrest. And although delays may be attributable to change in personnel, difficult investigation, use of several

aliases, or multiple agencies and files being transferred among agents, the government has made no such representation. Here, the government has failed to provide *any* explanation and merely argues that the "reason for the delay" factor should not be weighed heavily against it. Indeed, as in *United States v. Alterma*, the government failed to provide an explanation for the gaps of inactivity in the search for the Defendant in this case. *See* Case No. 11-cr-20228-PAS, ECF No. [37]. As such, the Court cannot conclude that the delay here is attributable to simple negligence and therefore that it should be weighted less heavily under the circumstances presented in this case.

Unlike in *Oliva*, the government here does not argue and has not presented evidence that the investigation of the Defendant was particularly complicated or sophisticated. In *Oliva*, the Eleventh Circuit noted that the underlying investigation "included twenty-five witnesses located throughout numerous states, nine suspects, almost 100 exhibits, several search warrants, shoe-tread analysis, and more." 909 F.3d at 1305. Rather, the investigation in this case would appear to be relatively simple. Nor is this a case like *Clark*, in which police did not actively search for the defendant for 17 months because they erroneously assumed that the United States' Marshal's Office would serve the arrest warrant. 83 F.3d at 1352. In addition, this case is distinguishable from *Villareal*, in which the Court found that a delay of ten years did not violate the defendant's speedy trial rights, because in *Villarreal*, the defendant attempted to evade police—there is no such evidence here. 613 F.3d at 1357. The record indicates that the government did virtually nothing to locate the Defendant for a year following the indictment, and then again for 15 months between February, 2018 and May, 2019. As such, the Court does not conclude that the delay was unintentional.

Because the government offers no explanation whatsoever for the significant delays in this case, the government has failed to fulfill its constitutional obligation to make a diligent, good-faith effort to locate the Defendant, and this factor weighs heavily against the government.

9

### C. The Defendant's assertion of a speedy trial right

The parties agree and the Court finds that the Defendant timely asserted her right to a speedy trial. *See Velasquez*, 749 F.3d at 184 (concluding knowledge of the indictment is "the appropriate measure for the timely assertion of the speedy trial right"); *Bagga*, 782 F.2d at 1542 (examining period of time from indictment in 1978 to time when defendant learned of the indictment in June or July 1981, and concluding the delay was "presumptively prejudicial" thereby triggering an inquiry into the other three *Barker* factors).

### D. Prejudice to the Defendant

If the first three factors weigh heavily against the government, the defendant need not demonstrate actual prejudice to succeed on her speedy trial claim. *See United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) ("[I]n this circuit, a defendant generally must show actual prejudice unless the first three factors . . . all weigh heavily against the government." (alterations in original; internal quotation marks and citation omitted)). Prejudice is presumed given the length of the delay. *See Ingram*, 446 F.3d at 1338. Here, the Court has determined that the first three factors weigh heavily against the Government.

Nevertheless, should the Court be in error in its evaluation of the first three *Barker* factors, the Court determines that the Defendant has not demonstrated actual prejudice. In evaluating actual prejudice under the fourth *Barker* factor, the Court considers three policy interests that the right to a speedy trial protects: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the accused's anxiety and concern; and (3) the limitation of any possible impairment of the defense. *United States v. Schlei*, 122 F.3d 944, 988 (11th Cir. 1997). Here, there is no showing that witnesses or evidence are no longer available or the ability to present a defense has been hindered. Moreover, as the Defendant was released on bond, no claim of a delayed incarceration exists.

## IV. CONCLUSION

For the reasons set forth, and following the Court's analysis of the four factors identified by the Supreme Court in *Barker*, it is **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss for Violation of Speedy Trial, **ECF No. [13]**, is **GRANTED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 28, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

cc: counsel of record